UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
GLOBAL REINSURANCE CORPORATION,

        Plaintiff,

     -against-                                  06 Civ. 1304 (LAK)

ARGONAUT INSURANCE COMPANY,

        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

> Joseph J. Schiavone
> Jeffrey S. Leonard
> Virginia A. Pallotto
> BUDD LARNER, P.C.
>
> P. Jay Wilker
> WILKER & MCKAY
>
> *Attorneys for Plaintiff*
>
> Dan E. LaBelle
> Theresa W. Hajost
> Daniel A. Blumenthal
> HALLORAN & SAGE LLP
> *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff Global Reinsurance Corporation ("Global") and defendant Argonaut Insurance Company ("Argonaut") were parties to several retrocessional reinsurance contracts, each of which contained a mandatory arbitration clause. Disputes arose over Argonaut's obligation to pay

2

various reinsurance claims, and the parties resorted to arbitration in late 2003 to resolve them. They initially appeared before this Court in 2006 when Global filed a motion to enforce a confidentiality order issued by the arbitration panel. Argonaut moved for a stay of the judicial proceedings pending a ruling by the panel interpreting the confidentiality order, which the Court granted. The arbitration then proceeded to its conclusion and the panel issued two provisional final awards and a final award, which it later clarified with an order. Argonaut now moves to confirm the arbitrators' final award and vacate the subsequent order.[1] Global moves to confirm the final award as clarified.[2]

*Facts*

Global and Argonaut are reinsurance companies that entered into a series of contracts (collectively the "Treaties") whereby Argonaut agreed to provide retrocessional reinsurance coverage to Global.[3] In brief, "[r]einsurance occurs when one insurer (the 'ceding insurer' or 'reinsured') 'cedes' all or part of the risk it underwrites, pursuant to a policy or group of policies, to another insurer. . . . The purpose of reinsurance is to diversify the risk of loss . . . and to reduce required

---

[1] Pet. to Confirm [Docket Item 11].

[2] Mot. to Confirm [Docket Item 14].

[3] The Treaties are the so-called "Excess Per Risk Facultative Casualty and Treaty Excess of Loss Retrocessional Treaty" ("Treaty 4034"), "Common Account Quota Share Facultative Casualty Retrocessional Treaty" ("Treaty 4158"), "Facultative Casualty First Excess of Loss Retrocessional Treaty" ("Treaty 4603"), "First Excess of Loss Retrocessional Clash Treaty" ("Treaty 4753"), "Facultative Casualty Second Excess of Loss Retrocessional Clash Treaty" ("Treaty 4777"), and "First Surplus Facultative Casualty Retrocessional Treaty" ("Treaty 6103"). *See* Leonard Decl. Ex. G, at 1.

capital reserves."[4] Retrocessional reinsurance is "a form of reinsurance provided by one reinsurance company, 'the retrocessionaire,' to another reinsurance company, 'the retrocedent.' The goal . . . is to indemnify the retrocedent for losses that the retrocedent sustains under the reinsurance policies that it has issued to insurance companies."[5]

Each of the Treaties at issue here contains a clause mandating that all disputes be resolved through arbitration. For example, Treaty 4034 provides that

> "A. Any dispute or difference hereafter arising with reference to the interpretation, application or effect of this Reinsurance Agreement or any part thereof, whether arising before or after termination of the Reinsurance Agreement, shall be referred to a Board of Arbitration consisting of two (2) arbitrators and an umpire, who shall be active or retired officers of Insurance or Reinsurance Companies. The seat of the Board of Arbitration shall be in New York unless the disputants agree otherwise.
>
> "B. One (1) arbitrator shall be chosen by [Global] and the other by [Argonaut]. The umpire shall be chosen by the two (2) arbitrators."[6]

The Treaties detail the method by which an arbitration is to be initiated and how it is to proceed if a party fails to appoint its arbitrator or if the arbitrators are unable to appoint an umpire.[7] It provides also that:

---

[4] *Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.*, 4 F.3d 1049, 1053 (2d Cir. 1993) (internal citations omitted).

[5] *Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 875 F. Supp. 1022, 1024 (S.D.N.Y. 1995) (internal quotation marks and citations omitted).

[6] Leonard Decl. Ex. A, Art. IX. Similar arbitration clauses appear in Treaty 4603, *see id.* Ex. B, Art. XIV, Treaty 4753, *see id.* Ex. C, Art. XV, and Treaty 4777, *see id.* Ex. D, Art. XV. The arbitration clauses in Treaties 4158 and 6103, although different in wording, similarly mandate arbitration and describe the same methodology by which to constitute the arbitral board. *See id.* Ex. E, Art. IX; Ex. F, Art. XIII.

[7] *See, e.g., id.* Ex A., Art. IX(C).

4

"The Board shall interpret this Reinsurance Agreement as an honorable engagement rather than as a merely technical legal obligation and shall make its award with a view to effecting the general purpose of this Reinsurance Agreement in a reasonable manner, rather than in accordance with the literal interpretation of the language. It shall be relieved from all judicial formalities and may abstain from following the strict rules of law. The decision in writing of the Board or a majority of the Board rendered at the earliest convenient date shall be final and binding upon all parties."[8]

Pursuant to these clauses, Global submitted a demand for arbitration on December 31, 2003, seeking to recover $5,075,236.19, plus interest, for amounts allegedly owed to it by Argonaut.[9] It appointed James F. Dowd as its arbitrator.[10] Argonaut appointed Paul C. Thompson III as its arbitrator, and together the arbitrators chose Therese A. Adams as umpire of the arbitral panel (the "Panel"). The parties engaged in an extensive discovery and briefing process, which was followed by a hearing from November 1 to 4, 2005 (the "November hearing") at which they submitted evidence, exhibits, testimony, and arguments.[11] The Panel was asked to resolve whether, and to what extent, Argonaut was required to indemnify Global for various reinsurance claims (the

---

[8] *Id.* Art. IX(D). The same language appears in the arbitration clauses of Treaties 4603 (Art. XIV(d)), 4753 (Art. XV(d)), and 4777 (Art. XV(d)). Although Treaties 4158 and 6103 employ different language, they indicate generally that (1) the arbitrators are to consider the treaty as an honorable agreement, (2) the arbitrators need not be bound by the strict rules of law, and (3) "[t]he decision of the arbitrators shall be final and binding . . . but failing to agree, [the arbitrators] shall call in the umpire and the decision of the majority shall be final and binding on both parties." *Id.* Ex. E, Art. IX(3); Ex. F, Art. XIII(B).

[9] Leonard Decl. Ex. G. The amount sought by Global was that allegedly owed to it by Argonaut as of June 30, 2003.

[10] *Id.*

[11] Pet. to Confirm ¶ 17.

"Universe of Claims") allegedly arising under the Treaties.[12]

On December 29, 2005, the Panel issued a "Provisional Final Award"[13] in which it made three rulings relevant to this action.

It found first that "Global ha[d] not presented sufficient documentation to support an award for those claims listed in the 'Universe of Claims' where Argonaut ha[d] indicated that Global's initial notice was late" (the "Late Claims").[14] It therefore denied Global's request for interest on those claims.

The Panel next ruled that Global was not entitled to recover interest on the "Clash Claims balances" Argonaut allegedly owed pursuant to Treaties 4753 and 4777 (the "Clash Claims").[15]

Notwithstanding these two rulings, however, the Panel did not deny recovery on the underlying Late Claims or Clash Claims.[16] Rather, it ordered Global to cite to documents already in "the existing record before [the Panel]" to establish when it had provided Argonaut with first

---

[12] The Universe of Claims consisted of two classes of claims, the "non-clash claims" arising out of Treaties 4034, 4158, 4603, and 6103 and the "clash claims" arising out of Treaties 4753 and 4777. *See* Hajost Decl. Ex. 7, at 3-4.

[13] Leonard Decl. Ex. H ("Provisional Final Award").

[14] *Id.* ¶ 1 (emphasis omitted).

[15] *Id* ¶ 13.

[16] The Panel noted that "unless Global [could] demonstrate from the record already before the panel that it ha[d] provided all the necessary information [to show that Argonaut was required to pay the Clash Claims balances] . . . , [it was] prepared to further order that none of these claim balances [were] recoverable from Argonaut." *Id.*

notice for each of the Late Claims.[17]  And it similarly required Global to point to record evidence to show that it was entitled to recover on the Clash Claims.

The Panel ruled also that the Treaties delineated specific criteria that Global needed to satisfy whenever it submitted a claim to Argonaut.[18]  It therefore ordered Global to cite to record evidence showing that it had (1) provided sufficient notice for every claim in the Universe of Claims in which Argonaut was "likely to [have been] involved" and (2) sent initial notice of those claims to Argonaut with "reasonable promptitude."[19]  The Panel indicated that it then would determine whether Global had demonstrated compliance with these notice criteria and, notwithstanding that determination, whether Global was entitled to recover on each claim.[20]

On July 6, 2006, the Panel issued a "Second Provisional Final Award." It recited that the Panel had not considered any of the "documentation submitted by Global to the Panel after the

---

[17]   *Id.* ¶ 1.

[18]   These criteria "required a higher level of ceding company performance than customarily found in similar clauses, used in other retrocessional treaties at the corresponding time period." LaBelle Decl. Ex. 3 ¶ 3.

[19]   Provisional Final Award ¶ 2.  The Panel defined "reasonable promptitude" to mean that the "initial claims notice was sent prior to the end of the financial quarter following the date that Global's ceding company's notice is received by Global or accompanied by a written explanation as to why providing notice within such period was not possible." *Id.*  It stated that Argonaut was "likely to be involved" in a claim when "Global's 'incurred' claim is 50% or more of the lowest attachment point of any excess of loss" treaties, "Global receives notice of 'category' claims," and "Global initiates, or is made a party to any arbitration or litigation proceeding with its ceding companies where the proceedings involve claims covered under any of the excess of loss" treaties. *Id.* (footnotes omitted).

[20]   *See* LaBelle Decl. Ex. 3 ¶ 3.  The Panel "reserve[d] consideration of post-award interest rates and the parties' respective claims for attorney's fees and other costs" on those claims until Global had submitted its documentation.  Provisional Final Award ¶ 2.

close of the [November] hearing,"[21] but nevertheless held that "Global's conduct [did] not constitute bad faith or gross negligence."[22] It then permitted (1) Argonaut to submit evidence addressing whether it had been prejudiced by Global's conduct and (2) both parties to submit papers addressing attorney's fees and "open Clash technical coverage" issues.[23]

Following the parties' submissions, the Panel issued its "Final Award" on March 14, 2007. It ruled in relevant part that (1) Argonaut had been prejudiced by Global's conduct and awarded it $20,000,[24] (2) Global owed Argonaut $25,000 in attorney's fees,[25] and (3) Argonaut owed Global $333,697.90 on the Clash Claims.[26] The Panel denied "[a]ll other requests for relief."[27]

On March 21, 2007, Argonaut tendered a check to Global for $288,697.90, which it

---

[21] Leonard Decl. Ex. I ("Second Provisional Final Award") ¶ 1. The Panel did not state which of Global's submissions it had considered and which it had disregarded. Argonaut asserts that only 130 of the approximately 5200 pages submitted by Global were part of the record at the close of the November hearing and therefore eligible for consideration. *See* Hajost Decl. Ex. 10, at 2.

[22] Second Provisional Final Award ¶ 2.

[23] *Id.* ¶¶ 2, 3-4.

[24] Leonard Decl. Ex. J ("Final Award") ¶ 1.

[25] *Id.* ¶ 2.

[26] *Id.* ¶ 3. Global had sought $667,395.80 on these claims but had failed to provide adequate proof of loss for that amount.

[27] *Id.* ¶ 7.

8

described as "the net amount payable by Argonaut pursuant to the 3/14/2007 Final Award."[28] Global objected and asserted that the total amount owed by Argonaut was $2,361,909.32,[29] the principal part of which represented approximately $1.7 million allegedly owed for "non-clash balances not disallowed by the Panel" (the "Non-Clash Claims").[30] Argonaut responded that the Panel's decisions made clear that "Global failed to prove that the claims it brought to arbitration complied with the contract terms" and Argonaut therefore was obligated to pay only the Clash Claims.[31]

After further submissions, the Panel issued an "Order Clarifying Final Award" on June 25, 2007 (the "June 25 Order"), stating succinctly that "Argonaut must pay Global $1,792,686.90 within 30 days."[32] Argonaut requested clarification on the ground that the Panel lacked authority to revisit the Final Award because it had denied "all remaining requests for relief" without having found that "any of Global's claims met the [notice] criteria established by the contracts and set forth in [the Panel's] previous rulings."[33] Argonaut asserted also that even if it were obligated to pay the Non-Clash Claims, the amount of that payment should be $23,011.19 less than

---

[28] Leonard Decl. Ex. K. This was the net amount after subtracting from Global's $333,697.90 award the $45,000 awarded to Argonaut on its prejudice and attorney's fees claims.

[29] *Id.* Ex. O, at 2.

[30] *Id.* Ex. Q, at 2.

[31] *Id.* Ex. P, at 2.

[32] *Id.* Ex. T ("June 25 Order") ¶ 1.

[33] *Id.* Ex. U, at 3.

9

that stated in the June 25 Order.[34]  Global agreed that the Panel overstated the amount owed by $20,000, therefore concluding that Argonaut owed $1,772,686.90 on the Non-Clash Claims.[35]

On October 9, 2007, the Panel issued a "Second Order Clarifying and Modifying Provisional and Final Awards" (the "October 9 Order") in which it stated that

> "1. In May 2006 when the Panel deliberated and found that Global's activities did not rise to the level of gross negligence and bad faith, it was the Panel's intent to modify its Dec. 29, 2005 Provisional Final Award regarding the non-payment of balances due from Argonaut for those balances classified as 'late notice.' The modification intended on the July 6, 2006 Second Provisional Final Order was to order Argonaut to pay those balances, previously classified as 'late notice', to Global because of the Panel finding that Global's conduct did not rise to the level of gross negligence and bad faith;
>
> "2. The Panel regrets that this intent was not clear in its July 6, 2006 Second Provisional Final Award. The July 6, 2006 Second Provisional Final Award was intended to modify the Dec. 29, 2005 award by ordering Argonaut to pay balances classified as 'late notice'.
>
> "3. Since the Panel was unable to obtain consensus between the parties as to the actual amounts due for balances classified as 'late notice,' the Panel, using the evidence available, issued its June 25, 2007 Order Clarifying Final Award which ordered Argonaut to pay Global $1,792,686.90."[36]

Argonaut's arbitrator dissented from this order on the ground that the Panel was *functus officio*.[37]

---

[34] *Id.* at 4. Argonaut contended that the amount incorrectly included a $20,000 claim that it already had paid and $3,011.19 in interest for a claim the Panel had held was not covered by the Treaties.

[35] *Id.* Ex. V, at 2.

[36] *Id.* Ex. W.

[37] *Id.* at 2.

*Discussion*

The dispute in this case concerns whether or not Argonaut is obligated to pay Global on the Non-Clash Claims. Argonaut contends that the Panel denied these claims in the Final Award but subsequently granted them in the June 25 Order. It seeks to (1) vacate the June 25 Order on the ground that the Panel lacked authority to modify the Final Award and (2) confirm the Final Award insofar as it entitled Global to recover on the Clash Claims but denied the Non-Clash Claims. Global asserts that the Panel's rulings in the Second Provisional Final and Final Awards entitled it to recover on the Non-Clash Claims, a fact made apparent by the June 25 Order. It moves to confirm the Final Award as clarified by the June 25 Order, thereby seeking a judgment of $1,792,686.90.

I. *Argonaut's Motion to Vacate*

The Federal Arbitration Act ("FAA") narrowly defines the Court's authority to vacate an arbitration award.[38] The Court has discretion to do so

> "(1) where the award was procured by corruption, fraud, or undue means;
>
> "(2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> "(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> "(4) where the arbitrators exceeded their powers, or so imperfectly executed them

---

[38] *See Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 139 (2d Cir. 2007) (noting that an arbitration award may be vacated only if the moving party establishes at least one of the four statutory bases articulated in Section 10 of the FAA or if the award was issued in "manifest disregard of the law").

that a mutual, final, and definite award upon the subject matter submitted was not made."[39]

The party seeking vacatur bears the burden of establishing one of these statutory bases.[40]

Argonaut contends that the Final Award, in principal part, entitled Global to recover $333,697.90 on the Clash Claims, awarded Argonaut $20,000 in attorney's fees and $25,000 on its prejudice claims, and denied Global's Non-Clash Claims. It asserts that this resolved all matters submitted for arbitration and that the Panel thereafter had no authority to reconsider the award or grant additional relief because it was *functus officio*.[41] Argonaut therefore argues that the June 25 Order granting Global's Non-Clash Claims exceeded the Panel's powers and should be vacated under Section 10(a)(4) of the FAA.

As an initial matter, the Panel never explicitly denied the Non-Clash Claims. Rather, Argonaut infers that the Panel must have done so because it (1) found Global's initial efforts to establish its right to recover on those claims insufficient,[42] (2) rejected most of the documentation

---

[39] 9 U.S.C. § 10(a).

[40] *See Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).

[41] The common law doctrine of *functus officio* "means 'without further authority or legal competence because the duties and functions of the original commission have been fully accomplished.'" *Employers' Surplus Lines Ins. Co. v. Global Reinsurance Corp.-U.S. Branch*, No. 07 Civ. 2521 (HB), 2008 WL 337317, at *4 (S.D.N.Y. Feb. 6, 2008) (quoting BLACK'S LAW DICTIONARY 682 (7th ed. 1999)). Arbitrators become *functus officio* when they have decided all issues submitted for arbitration. *See Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991).

[42] Provisional Final Award ¶¶ 1-2.

Global submitted in its second attempt to prove those claims,[43] (3) articulated specific monetary awards only with respect to Global's Clash Claims and Argonaut's attorney's fees and prejudice claims,[44] and then (4) denied "[a]ll other requests for relief" without similarly articulating any award for the Non-Clash Claims.[45] Argonaut, however, overlooks three key findings that make plain that Global was entitled to recover on the Non-Clash Claims.

The Panel stated first that Global's right to recover on the Non-Clash Claims was not dependent on its having complied with the notice criteria.[46] Its subsequent rejection of most of the documentation Global submitted to demonstrate compliance therefore had no bearing on the Panel's resolution of those claims.

The Panel then determined that "Global's conduct [did] not constitute bad faith or gross negligence."[47] This finding would have been superfluous had the Panel denied the Non-Clash Claims because Global's conduct would have been irrelevant.[48]

---

[43] Second Provisional Final Award ¶ 1.

[44] Final Award ¶¶ 1-3.

[45] *Id.* ¶ 7.

[46] *See* LaBelle Decl. Ex. 3 ¶ 3 ("Each claim, therefore, will be identified as being 'complying' or 'non-complying' with the [notice] criteria . . . . [T]he panel will then determine whether any of the 'complying' or 'non-complying' claims are recoverable from Argonaut").

[47] Second Provisional Award ¶ 2; Final Award ¶ 1.

[48] *See, e.g.*, *Christiania Gen. Ins. Corp. of New York v. Great Am. Ins. Co.*, 979 F.2d 268, 281 (2d Cir. 1992) (stating that "a reinsured's failure to provide prompt notice may entitle the reinsurer to relief without showing prejudice if the reinsured acted in bad faith."); *see also Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.*, 4 F.3d 1049, 1067-69 (2d Cir. 1993).

Finally, the Panel ruled that Argonaut had been prejudiced by Global's conduct. This ruling too would have been unnecessary had the Panel meant to dispose of the Non-Clash Claims because the question of prejudice arises only where a retrocessionare otherwise obligated to pay a claim nonetheless seeks to avoid that obligation on the ground that its rights were compromised when the retrocedent failed to provide prompt notice of that claim.[49]

In consequence, the only logical reading of the Provisional Final and Final Awards is that the Panel had determined that Global was entitled to recover on the Non-Clash Claims, albeit without articulating the amount of recovery. It ultimately quantified that amount in the June 25 Order. As that order merely clarified the Final Award[50] so as "to correct obvious error in the translation of [the Panel's] own decision into an award-amount,"[51] the Panel did not exceed its powers. Argonaut's motion to vacate the June 25 Order therefore is baseless.

---

[49] For example, under New York law a reinsurance company may avoid its obligation to pay claims for which it received late notice, absent an express provision in the treaty making timely notice a condition precedent to that obligation, only if it can demonstrate that it was prejudiced by that late notice. *See Unigard Sec. Ins. Co., Inc.*, 4 F.3d at 1067-69; *Christiania Gen. Ins. Corp. of New York*, 979 F.2d at 274 ("For a reinsurer to be relieved from its indemnification obligations because of the reinsured's failure to provide timely notice, absent an express provision in the contract making prompt notice a condition precedent, it must show prejudice resulted from the delay.").

[50] *See Hyle v. Doctor's Assocs., Inc.*, 198 F.3d 368, 370 (2d Cir. 1999); *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3d Cir. 1991) ("[T]he common law *functus officio* doctrine contains its own limitations[, including] (3) where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify.") (internal quotation marks and citations omitted).

[51] *Laurin Tankers Am., Inc. v. Stolt Tankers, Inc.*, 36 F. Supp. 2d 645, 650 (S.D.N.Y. 1999) (characterizing the power to correct obvious error as inherent "in the very nature of such a tribunal" and citing as support for this proposition *Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577 (2d Cir. 1967)).

II.     *The Motions to Confirm*

A district court's role when presented with a motion to confirm an arbitration award is strictly limited. The Court generally "must grant" the motion "unless the award is vacated, modified, or corrected" pursuant to Sections 10 or 11 of the FAA,[52] although it may remand a matter to the arbitrators to resolve ambiguities in the award or determine whether they exceeded their powers.[53] "Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'"[54]

Argonaut and Global both move to confirm their respective interpretations of the Final Award. As discussed above, Argonaut's assertion that the Final Award entitled Global to recover only a net total of $288,697.90 is without merit. On the other hand, no statutory grounds preclude the Court from granting Global's motion.

*Conclusion*

For the foregoing reasons, Argonaut's petitions to vacate the June 25 Order Clarifying Final Award and confirm the Final Award insofar as it entitled Global to recover only on the Clash Claims (Docket Item 11) is denied. Global's motion to confirm the Final Award as clarified by the June 25 Order Clarifying Final Award (Docket Item 14) is granted. Thus, Global is entitled to

---

[52] 9 U.S.C. § 9.

[53] *See Rich v. Spartis*, 516 F.3d 75, 83 (2d Cir. 2008); *Siegel v. Titan Indus. Corp*, 779 F.2d 891, 894 (2d Cir. 1985).

[54] *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984)).

judgment for $1,792,686.90 as set forth in the award.  The Clerk shall enter judgment accordingly and close the case.

        SO ORDERED.

Dated:       April 28, 2008

                                         _____
                                                   Lewis A. Kaplan
                                                 United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)